**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adan V. Medellin,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-00264-TUC-BPV<br><br>**ORDER** |

Plaintiff Adan V. Medellin filed the instant action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security. The Magistrate Judge has jurisdiction over this case pursuant to the parties consent under 28 U.S.C. § 636(c). (Doc. 9.) The matter is now fully briefed before this Court. (Docs. 14, 15, 19.) For the following reasons, the Court vacates the Commissioner's decision and remands for consideration in accordance with this Order.

## I. PROCEDURAL HISTORY

On March 12, 2013, Plaintiff filed an application for Social Security Disability Insurance Benefits. (Administrative Record ("AR") 200.) Plaintiff alleged disability as of October 1, 2011, but later amended the onset date to January 3, 2013. (AR 215.) Plaintiff claimed disability due to ulcerative colitis, depression, post-traumatic stress disorder ("PTSD"), and bipolar disorder. (AR 97.) Plaintiff's application was initially denied on June 11, 2013, (AR 127), and upon reconsideration on January 9, 2014 (AR 134). On

October 27, 2015, Plaintiff appeared with counsel and testified at an administrative hearing in front of an Administrative Law Judge ("ALJ"). (AR 44–95.) The ALJ issued an unfavorable decision on December 14, 2015. (AR 20–33.) Following Plaintiff's Request for Review (AR 141), the Appeals Counsel denied Plaintiff's request on April 10, 2017 (AR 1–6), making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.

Plaintiff filed the instant action on June 8, 2017, raising five arguments why this Court should reverse the ALJ's decision and remand for benefits. Plaintiff argued that: (1) the ALJ failed to give weight to the opinion of treating physician Dr. Miguel Arenas; (2) the ALJ erred when he assigned no weight to the opinion of treating Nurse Practitioner Mary Vincenz and some weight to the opinion of consultative physician Gwendolyn Johnson; (3) the ALJ improperly considered Mr. Edward Corella's third-party opinion; (4) the ALJ did not give clear and convincing reasons for discrediting Plaintiff's testimony; and (5) the ALJ did not provide substantial evidence supporting his contention that Plaintiff could perform the jobs listed by the Vocational Expert ("VE"). (Doc. 14.)

## II. PLAINTIFF'S BACKGROUND, STATEMENTS IN THE RECORD, AND VOCATIONAL EXPERT'S FINDINGS

Plaintiff was forty-six years old on the date of the alleged onset of disability. (AR 200.) He completed the eleventh grade, but did not finish high school. (AR 47.)

Plaintiff testified at the administrative hearing that he previously worked as a grill operator and sandwich maker at Wendy's. (AR 48.) He was fired from this job because he and his supervisor could not get along. *Id.* Prior to that job, Plaintiff worked as a cashier at Factory 2-U for two months and Jack in the Box for approximately six months. (AR 49–51.)

On a daily basis, Plaintiff stated he typically did not wake until the afternoon because his medications made him drowsy. (AR 53.) He claimed he needed assistance with bathing and household chores, but was capable of doing the dishes, dusting, and

paying the bills. *Id.* Plaintiff explained he could walk between 10-15 minutes at a time, sit in a chair for 60 minutes, and was comfortable laying down for any period of time. (AR 60.)

Plaintiff described various ailments that limited his functioning. He claimed that he was unable to perform his past work because he had bleeding from his rectum, diarrhea, hearing loss, and an inability to get along with others. (AR 50–52.) Plaintiff stated that the diarrhea was sporadic, and he needed to defecate approximately four to five times a day. (AR 59, 75.) Furthermore, he claimed that his ulcerative colitis caused painful bleeding from his rectum. (AR 63.) This ailment caused him to bleed through his clothing at least three times a week without warning. (AR 68–69.) He also took Humira for the ulcerative colitis, which inhibited his immune system. (AR 68.)

The VE testified that Plaintiff's prior work included convenience store cashier, fast food worker, fast food cook, and retail clerk. (AR 77–78.) The ALJ presented a hypothetical employee to the VE, asking if there was work available for an individual with the same age, education, and work history as Plaintiff; who could perform light work, occasional lifting and standing, sitting, or walking up to six hours; frequent handling but no exposure to loud noises; occasional interaction with the public; and no more than simple work. (AR 78–79.) The VE stated Plaintiff's past work would not be appropriate but such a person could perform work as a laundry worker, mail room clerk, and night cleaner. (AR 79–80.)

In her assessment, the VE further stated that an employee who was off task ten percent of the time (approximately six minutes per hour) would be tolerated in a workplace, but when the off-task time increased to fifteen percent, it would eliminate half of the jobs. (AR 81.) The VE explained an hourly break time limited to approximately six minutes was not disruptive, and was expected in the workplace to help employees refocus. (AR 82.) However, the percentage of time off task could not be at unscheduled intervals and taken all at once, i.e. for 20 minutes at a time to use the restroom, because an extended break period would not be appropriate. (AR 81–82.)

The ALJ then offered two additional hypotheticals. The first added a sit-stand option to the prior hypothetical, which the VE concluded precluded the job of night cleaner but not mail room clerk or laundry worker. (AR 82.) The second limited the first hypothetical employee to sedentary jobs, which the VE stated would still permit work as a final assembler, bench hand, and document preparer. (AR 83–84.) However, in all of the hypotheticals the off-task limitations still applied. (AR 84.) The VE later noted that the off-task limitations were not incorporated into the Dictionary of Occupational Titles, but were augmented by the VE's experience. (AR 94.)

Plaintiff's counsel noted that the ALJ's hypotheticals mirrored the limitations expressed by a non-examining physician Dr. Gwendolyn Johnson. (AR 84.) Counsel then elaborated upon the ALJ's hypothetical:

> Q   [T]he physical and the mental limitations that the judge gave you were from what's called a non-examining physician and the non-examining physician also indicated that the claimant would require easy access to restroom facilities. Can you explain which jobs would remain if that were to be accommodated?
>
> A   Well, I believe that if a person is working inside a facility, that bathrooms are going to be available. It's not like they're in construction or out on a job site or that sort of thing, so I would say that all the jobs I mentioned would have ample access to a restroom. *It's just a matter of how often.*
>
> Q   Right, and how that particular facility, company, worksite is laid out, correct?
>
> A   Well if you're talking about a factory, I mean, there's going to be bathrooms available. . . .
>
> Q   Well I think you heard Mr. Medellin testify that he experiences diarrhea and bleeding and let's just assume that he needs to leave his work site in order to accommodate and not bleed through his pants or have accidents in his pants. It really depends on the worksite itself in terms of how close his bathroom is so that he doesn't have an accident. In other words, not every factory is laid out the same. . . . So we're really talking about individual work sites and whether or not they particularly have easy access to bathrooms. So how does that affect the numbers? . . .

> A   I really have no way to say how easy the access is. Easy access would be different for different people so you know, there is no way for me to answer a question about restroom placement in places of work.

(AR 84–86 (emphasis added).) In addition, the VE determined that the non-examining physician's conclusion that Plaintiff was moderately limited in his ability "to perform at a consistent pace without an unreasonable number and length of rest periods" would preclude all work. (AR 87–88.) Moreover, the VE stated that the non-examining physician's description of Plaintiff as moderately "unable to complete a workday and work weeks without interruptions from psychologically-based symptoms and to perform at a consistent pace without more than the normal rest periods" would also preclude all work. (AR 94.)

## III.   SUMMARY OF ALJ'S FINDINGS

Whether a claimant is disabled is determined pursuant to a five-step sequential process. *See* 20 C.F.R. §§ 404.1520, 416.920. To establish disability, the claimant must show: (1) he has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) he has a severe impairment(s) ("step two"); and (3) his impairment(s) meets or equals the listed impairment(s) ("step three"). *Id.* "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC)." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015). At this step, the ALJ considers (a) whether there is an impairment that would reasonably be expected to cause the claimant's symptoms, and (b) the severity of claimant's ailments, including intensity, persistence, and limiting effects of alleged symptoms. Social Security Ruling ("SSR") 96-7p (superseded by SSR 16-3p (Mar. 28, 2016)). If the claims of intensity, persistence and limiting effects are not supported by the evidence, the ALJ needs to determine, based on the record, whether plaintiff's claims are credible. *Id.* Then, at step five, "[a]fter developing the RFC, the ALJ

must determine whether the claimant can perform past relevant work." *Dominguez*, 808 F.3d at 405. At this stage, "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 3, 2013. (AR 22.)

At step two, the ALJ determined that Plaintiff had severe impairments, including ulcerative colitis, degenerative disc disease, bipolar disorder, and post-traumatic stress disorder. *Id.*

But the ALJ decided, at step three, that the Plaintiff's impairments did not meet or equal the listed impairments either singularly or in combination. *Id.*

The ALJ ascertained that while Plaintiff's impairments could cause the purported symptoms, Plaintiff's subjective claims of the intensity, frequency, and limiting effects of his impairments were not credible. (AR 25.)

The ALJ stated that given the limiting effects of his ailments, Plaintiff's RFC included performing light work, but Plaintiff "can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch, and crawl. He is limited to no more than frequent handling, fingering, and feeling, bilaterally. He must avoid concentrated exposure to loud noise, vibration, and hazards such as unprotected heights and significant moving mechanical parts. Further, he is limited to simple, routine tasks, with only occasional, superficial interaction with the general public, simple work-related decisions, and no assembly-line pace work." (AR 24.) The ALJ's RFC did not include any limitations incorporating Plaintiff's restroom needs, any necessary rest periods, or interruptions due to his psychological impairments.

At step four, the ALJ concluded that Plaintiff could not perform past relevant work. However, at step five, given Plaintiff's RFC, age, education, and work experience the ALJ found that Plaintiff was not disabled and could work as a laundry worker, mailroom clerk, or night cleaner. (AR 31–32.)

**IV. STANDARD OF REVIEW**

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C.§§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance,'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Moreover, the Commissioner, not the Court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence, and determine the case accordingly. *Matney*, 981 F.2d at 1019. However, the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence. . . . Rather, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Tackett*, 180 F.3d at 1098 (internal citation and quotation marks omitted).

If the district court determines that the ALJ committed legal error, it must then consider whether the error was harmless. *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Harmless error occurs "when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination." *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (citation and internal quotation marks omitted).

///

///

## V. TREATING PHYSICIAN DR. MIGUEL ARENAS' OPINION

Dr. Arenas treated Plaintiff from June 2014 for ulcerative colitis. (AR 882.) Dr. Arenas submitted a letter which noted that Plaintiff's gastrointestinal problems caused "uncontrolled and unpredictable" bleeding and diarrhea. (AR 682.) Dr. Arenas also concluded that Plaintiff would need to use the restroom at least three to four times a day at unpredictable times, and that his immune system was compromised because of his gastrointestinal medication. *Id.* Because of his immunosuppression, Dr. Arenas claimed that Plaintiff needed to avoid sick and infectious individuals. *Id.*

Dr. Arenas' opinion was supported in part by the record of non-examining physician Dr. Dodson, who noted that Plaintiff would need "easy access to restroom facilities." (AR 120.) The ALJ gave great weight to Dr. Dodson's opinion, stating it was consistent with the medical evidence, and Dr. Dodson had specialized knowledge of Social Security regulations. (AR 28–29.)

In the administrative hearing, Plaintiff's counsel expressed concern that because of the urgent nature of Plaintiff's impairment, he would require a bathroom that was frequently available at a moment's notice and close to his workstation. (AR 85.) When asked how these limitations affected the availability of work, the VE was unable to provide the number of jobs available. (AR 86.) The VE simply concluded that the limitation should not preclude work because all facilities had restrooms. (AR 86.)

Though discussed briefly in the opinion, the ALJ failed to assign a weight to Dr. Arenas' opinion. The ALJ's only response was that the opinion made "it clear that the claimant can work with easy access to bathrooms." (AR 26.) Plaintiff argues that the ALJ legally erred by not giving weight to the opinion, not considering the frequency of bathroom use in his RFC, and not addressing Plaintiff's need to avoid sick and infectious people. (Doc. 14 at 11.) Defendant claims that the VE's determination that all jobs had restrooms adequately addressed Plaintiff's need for frequent restroom use; therefore, the RFC was appropriate even though it did not include a limitation to facilities with *easy* access to restrooms. (Doc. 15 at 13.)

There are three categories of medical opinions (treating, examining, and non-examining) and each type is, for the most part, accorded different weight. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). Generally, the opinion of a treating source is given greater weight than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *see also Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships.").

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). In contrast, an ALJ may reject a physician's opinion that has been contradicted by another opinion by "providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830). An ALJ provides sufficient reasoning for rejecting a physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings. . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 632 (internal citation omitted).

First, the Court finds that the ALJ erred by not assigning a weight to treating physician Dr. Arenas. *See e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

Second, the ALJ gave no reason to reject Dr. Arenas' opinion, yet failed to include the requirement to avoid sick and infectious people in his RFC. The ALJ never asked the VE whether Plaintiff's need to avoid sick and infectious individuals affected his ability to work. Also, the ALJ did not provide any contradictory opinion that undermined this limitation. The ALJ failed to provide clear and convincing reasons for not incorporating a

treating physician's unchallenged opinion. Ignoring Dr. Arenas' express limitations constituted legal error. *See id.*

Furthermore, while the ALJ did state that Plaintiff could work if there were restrooms available, he did not reconcile Plaintiff's unexpected, prolonged break time to use the bathroom with the off-task time limits described by the VE. Dr. Arenas' letter gives the frequency of Plaintiff problems (diarrhea three to four times a day and additional bleeding accidents). The ALJ failed to consider the number and length of breaks necessary to use the restroom and how this would affect his employability. The VE stated that her analysis of employability would depend on how often the Plaintiff needed to use the restroom (AR 85), but the VE never established whether the frequency of Plaintiff's bowel problems would preclude work. Moreover, the ALJ appeared to approximate that Plaintiff's break times may extend to up to twenty minutes, well beyond the fifteen percent off-task time discussed by the VE. (AR 81.) The ALJ further asked whether taking longer breaks unexpectedly rather than short hourly breaks would be acceptable. (AR 81.) The VE responded that leaving work unexpectedly for an extended time frame of twenty minutes would not be tolerated. (AR 82.) However, the RFC did not incorporate these limitations. Furthermore, the ALJ's opinion did not consider that Plaintiff's impairments require him *immediate* access on a haphazard basis to the restroom to take care of his bleeding and diarrhea. The VE's consideration of easy access did not explain whether an instantaneous and haphazard need for restroom facilities would preclude work.

The ALJ failed to give weight to a treating physician's opinion, and the RFC did not consider Plaintiff's need to be isolated from sick and infectious individuals nor the effects of the frequency and duration of Plaintiff's restroom use on his employability. Since crediting Dr. Arenas' opinion could preclude Plaintiff from all work, the Court cannot find that this error was harmless.

///
///
///

## VI. CONSULTING PHYSICIAN DR. JOHNSON'S OPINION

Consultative examiner Dr. Johnson conducted a psychiatric consult and mental exam on May 22, 2013. (AR 383–387.) Dr. Johnson's opinion stated, "Based solely on his present levels of psychological and cognitive functioning, Mr. Medellin's prognosis for a successful entry into the work force is estimated as poor." (AR 385.) The opinion also described how Plaintiff would be limited in the workforce.

In the administrative hearing, the ALJ quoted the precise language used in Dr. Johnson's description to help determine whether the jobs listed by the VE were precluded. The ALJ asked:

> Q  The consultative examiner who saw Mr. Medellin . . . , I'm just going to read to you what her restrictions were. She says that Mr. Medellin's ability to sustain an ordinary routine without special supervision is likely impaired due to psychotic symptoms and low stress tolerance. His ability to maintain socially appropriate behavior is likely impaired due to psychotic symptoms and low stress tolerance. And his ability to respond appropriately to change in the work setting is likely impaired due to low stress tolerance. . . . If we apply those to the six positions that you mentioned, would that make those jobs or him unemployable at those jobs as well?
>
> A  I believe it would.

(AR 89.)

The ALJ's opinion described Dr. Johnson's May report in detail, and afforded the opinion some weight, but he declined to grant it great weight simply because it did not specify the degree of impairment. (AR 29.)

The Court cannot find that this explanation is legitimate, especially since the ALJ used the exact words of Dr. Johnson to determine whether Plaintiff's impairments would preclude him from work. To quote limitations in order to provide the VE with information to determine disability, then state that these exact limitations are not specific enough is paradoxical. Furthermore, 20 C.F.R. § 404.1519p(b) states that if the consultative examination was inadequate, the ALJ should have contacted Dr. Johnson to request a revised report. Moreover, the ALJ does not state, nor does the Court find, that Dr. Johnson's opinion is inconsistent with the medical evidence. Since the VE explicitly

stated that crediting Dr. Campbell's opinion would preclude Plaintiff from work, the Court cannot find that the error was harmless.

## VII. NURSE PRACTITIONER MARY VINCENZ'S OPINION

Nurse Practitioner Mary Vincenz was Plaintiff's treating behavioral health examiner from December 6, 2012 (AR 377) to at least October 19, 2015 (AR 681). During that time, Plaintiff saw NP Vincenz approximately every three months and occasionally more often. (AR 65, 372–89, 443–56, 458–72, 481–83.) On March 27, 2013, NP Vincenz determined that Plaintiff qualified as seriously mentally ill, which caused a major disruption in Plaintiff's ability to function at work. (AR 380–81.) NP Vincenz also wrote a letter on July 5, 2013, explaining that Plaintiff's bipolar disorder and PTSD would contribute to absenteeism from work, and concluded that his diagnoses precluded him from work. (AR 389.) Then, on October 19, 2015, NP Vincenz filled out a Mental Work Tolerance Recommendations Report that stated Plaintiff would be moderately limited in his "ability to complete a workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without more than the normal rest periods." (AR 679–681.)

The ALJ discussed the March 27, 2013 and October 19, 2015 evaluations in his opinion, but gave each no weight. For the former, the ALJ explained that a disability determination pertained to "an issue that is reserved to the Commissioner." (AR 28.) The ALJ added that "[m]edical opinions on these issues must not be disregarded; but cannot be entitled to controlling weight or even given special significance, even when offered by a treating source (SSR 96–5p)." *Id.*

The ALJ also gave the latter opinion no weight, stating that although she had a long-term treating relationship with the Plaintiff, she is not an acceptable medical source and her opinion was inconsistent with the medical record. (AR 30.)

"[I]n evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical *and other,* that reflects on the impairment and any attendant limitations of function." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (emphasis in original). Nurse practitioners

are considered other sources.[1] *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). An other source cannot determine whether impairment exists; but, the other source may outline the severity of Plaintiff's symptoms and the effect of such symptoms on functioning. SSR 06–03p. "[Other sources] are not entitled to the same deference [as acceptable medical sources] . . . . The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner,* 613 F.3d 1224); *see* 20 C.F.R. § 404.1527.

However, where a nurse practitioner has a significant relationship with the claimant, there exists "strong reasons to assign weight to her opinion." *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). As such, a nurse practitioner's opinion may outweigh an acceptable medical source if "she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation of her opinion." SSR 06–03p.

The ALJ was correct stating that the final determination of disability lies with the Commissioner. SSR 96–5p. The ALJ also gave a cursory acknowledgment that NP Vincenz had a significant history treating Plaintiff. But, the ALJ did not explain why NP Vincenz's opinion—that Plaintiff was limited in both his ability to complete a workday without psychological interruptions and to perform consistently without an unreasonable amount and length of rest periods—is inconsistent with the medical record. In fact, NP Vincenz's opinion is consistent with the opinion of Dr. Campbell, for which the ALJ gave controlling weight and for whom the ALJ found was a "qualified expert who has specialized knowledge of the Rules and Regulations of the Social Security Administration." (AR 23, 105.)

///

///

---

[1] This statement reflects the Social Security Administration's position at the time of the ALJ's decision. The SSA has since included nurse practitioners as acceptable medical sources.

- 13 -

The ALJ has not provided germane reasons for discounting NP Vincenz's opinion about the effect of Plaintiff's symptoms on functioning because the ALJ erroneously concluded that the opinion conflicted with the medical record. Furthermore, Plaintiff's ability to complete the workday is material to his determination of disability. The Court does not, therefore, find that this error is harmless.

## VIII. THIRD-PARTY OPINIONS

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent [other] evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Layperson testimony may be used "to show the severity of [the claimant's] impairment(s) and how it affects a claimant's ability to work." 20 C.F.R. § 404.1513(d) (2015). Laypersons are capable evaluators of impairments because "friends and family members [are] in a position to observe a claimant's symptoms and daily activities [and] are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993). To discount testimony of lay witnesses, the ALJ must provide germane reasons for doing so. *Id.* at 919. The ALJ's reasons must be specifically stated. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

Roommate and co-worker Edward Corella submitted a Function Report and letter in this matter. (AR 230–37, 267.) Mr. Corella noted that Plaintiff had interpersonal problems: he was unable to take orders, lost his temper with his employer, and handled stress poorly. (AR 236–37, 267.) Mr. Corella added that Plaintiff was often in pain, and was constantly bleeding from his colon. (AR 231, 235–37.) The ALJ neither assessed the weight given to the testimony, nor stated any reasons for discrediting it.

The Commissioner concedes that the ALJ erred because he did not properly address the third-party opinions, but claims the error was harmless. (Doc. 15 at 14.) The Court agrees that the Commissioner legally erred. However, Mr. Corella's observation of Plaintiff's temperament and physical ailments were consistent with a substantial portion of the medical evidence, including the improperly assessed opinions of Dr. Arenas, Dr. Johnson, and NP Vincenz. The Court finds the ALJ's errors evaluating the medical

- 14 -

examiners' evaluations were not harmless, and therefore the Court cannot find that the error in this instance was harmless.

## IX. CREDIBILITY DETERMINATION AND STEP FIVE EVALUATION

Because the Court finds that the ALJ committed error based on Plaintiff's first three arguments, and the error was not harmless, the Court does not reach Plaintiff's other arguments.

## X. REMAND FOR FURTHER PROCEEDINGS V. BENEFITS

To determine whether a court should remand for benefits or for further proceedings, the court engages in a three-step inquiry. First, the court must decide whether "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison,* 759 F.3d at 1020. A record is fully developed when there are no outstanding issues necessary to resolve whether the claimant is in fact disabled. *Treichler*, 775 F.3d at 1100–01. Nevertheless, remand for further proceedings is appropriate when "there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time" *Id.* at 1101 (internal citation and quotation marks omitted).

The Court finds that resolving the ambiguities in this case may clarify whether Plaintiff is disabled. Additional evidence may shed light on the following material issues: (1) whether Plaintiff's needs for immediate, unexpected use of bathroom facilities can be accommodated, (2) whether extended periods away from work for the restroom needs in combination with lost work because of psychological impairments would compel a disability determination, and (3) whether Dr. Arenas' limitation that Plaintiff avoid sick

///
///
///
///

- 15 -

people and infections would preclude work in the national economy.

Accordingly, IT IS ORDERED :

1. The decision of the Commissioner denying Plaintiff's claim for benefits is REVERSED.
2. This case is remanded for consideration in accordance with this Order.

Dated this 28th day of September, 2018.

*Bernardo P. Velasco*
Bernardo P. Velasco
United States Magistrate Judge